UNITED STATES of America, Appellee,

v.

Henry James WRIGHT, Jr.,
Defendant, Appellant.

No. 79–1187.

United States Court of Appeals,
First Circuit.

Submitted Jan. 11, 1980.

Decided March 27, 1980.

Stephen J. Rappaport and Rachlin, Rappaport & Shechtman, Boston, Mass., on brief, for defendant, appellant; Henry James Wright, Jr., on brief pro se.

Edward F. Harrington, U. S. Atty., and Elliot D. Lobel, Asst. U. S. Atty., Boston, Mass., on brief for appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

The appellant in this case, Henry J. Wright, Jr., was found guilty by a jury on December 15, 1976, of violations of 18 U.S.C. §§ 2421 and 2422 (transporting or causing to be transported a woman in interstate commerce for the purpose of prostitution) and sentenced to three years imprisonment. On appeal, this court affirmed Wright's conviction. *United States v. Wright*, 573 F.2d 681 (1st Cir. 1978). On July 19, 1978, appellant filed two motions for new trial on the basis of newly discovered evidence * pursuant to Rule 33 of the Federal Rules of Criminal Procedure. The district judge who had presided at trial denied both motions without holding a hearing and without issuing a written opin-

ion. Wright has appealed the denial of these motions.

At trial, the government's case against appellant consisted primarily of the testimony of Elizabeth Sault. She testified that she met appellant in the summer of 1975 through one Diane Carney, that appellant offered her a job as a prostitute during a trip to Connecticut with Diane Carney in July of 1975, that on various occasions during July and August of 1975 Diane Carney, using a rented Mercury Comet, drove her from Providence, Rhode Island, to Fall River, Massachusetts, where she performed acts of prostitution, and that she paid the proceeds of her prostitution to appellant. To corroborate Sault's testimony, the government introduced tapes of conversations recorded during an encounter between appellant and Sault after she had left his employ. The government also introduced business records of the agency from which Carney had rented the Comet allegedly used to transport Sault to Massachusetts. The recordkeeper for the rental agency testified that one receipt showed appellant had made one of the payments for rental of the Comet. Appellant took the stand at trial and denied offering Sault employment as a prostitute and denied that either he or Diane Carney had transported Sault across state lines for the purpose of prostitution. Diane Carney did not testify at the trial.

The new evidence appellant seeks to introduce at his requested new trial consists of the testimony of Diane Carney and receipts in Carney's possession pertaining to the rental of the Comet. Appellant alleges that this evidence is "newly discovered" because Carney moved before the trial without leaving a forwarding address, and appellant was therefore unable to locate her to testify at his trial. One of Carney's two affidavits submitted in support of appellant's motion states that she did not know Elizabeth Sault during June and July of 1975, that she never transported Sault to Fall River for the purpose of prostitution,

---

* One of appellant's motions is styled "Motion For New Trial, Business Records Error". In substance, the motion is one based on newly

discovered evidence and we so treat it for purposes of this appeal.

and that Sault's only relationship to the appellant was that of tenant-landlord. Carney's second affidavit states that she, and not appellant, made all the payments on the Comet allegedly used to drive Sault to Fall River. In support of this assertion, Carney offers to produce receipts demonstrating that the rental agency recordkeeper's testimony at trial was false.

■ A motion for new trial on the basis of newly discovered evidence will ordinarily not be granted unless the moving party can demonstrate that: (1) the evidence was unknown or unavailable to the defendant at the time of trial; (2) failure to learn of the evidence was not due to lack of diligence by the defendant; (3) the evidence is material, and not merely cumulative or impeaching; and (4) it will probably result in an acquittal upon retrial of the defendant. *See Pelegrina v. United States*, 601 F.2d 18, 20–21 (1st Cir. 1979); *In re United States,* 565 F.2d 173, 177 (1st Cir. 1977); *Johnson v. United States*, 32 F.2d 127, 129 (8th Cir. 1929); C. Wright & A. Miller, *Federal Practice and Procedure* § 557 at 515 (1969).

■ Motions for new trial are directed to the discretion of the trial court. In considering such a motion, the court has broad power to weigh the evidence and assess the credibility of both the witnesses who testified at trial and those whose testimony constitutes "new" evidence. *See United States v. Zannino*, 468 F.2d 1299, 1303 (1st Cir. 1972), *cert. denied*, 410 U.S. 954, 93 S.Ct. 1419, 35 L.Ed.2d 687 (1973); *United States v. Leach*, 427 F.2d 1107, 1111 (1st Cir. 1970). Ordinarily we will affirm the trial court's denial of a new trial unless the court has manifestly abused its discretion; the court's findings of fact will not be overturned unless they are without any support in the record. C. Wright & A. Miller, *Federal Practice and Procedure* § 559 at 541–42 (1969). In the case of a motion for new trial based upon newly discovered evidence, the trial court may deny the motion if it finds that any one of the requirements set out above is lacking.

Because the district court denied appellant's motion for new trial without issuing an opinion, we do not know the precise basis for its decision. Our examination of the record convinces us, however, that there was ample basis for the district court to deny appellant's motion.

■ First, although we have no basis for doubting that the testimony of Diane Carney was "newly discovered", it is far from clear that appellant exercised due diligence in seeking to locate her to testify at his trial. The record reveals that through pretrial discovery both appellant and his counsel had access to the grand jury minutes, which make clear the role that Diane Carney was to play in the prosecution's case. Nevertheless, appellant's trial counsel made no motion for a continuance in order to attempt to locate her to testify on appellant's behalf. *See In re United States, supra*, 565 F.2d at 176–77. The only support for appellant's contention that he made a concerted effort to locate Carney is the affidavit of Carolyn Bland, in which she states that on December 15, 1975, appellant was conducting an "investigation" to locate Diane Carney. Even if credible, however, Bland's affidavit establishes at most that on two occasions, once one year before trial and once during the trial, appellant asked Bland if she knew the whereabouts of Diane Carney. This evidence alone would not preclude the district court from finding a lack of due diligence on appellant's part.

■ Even if we were satisfied that appellant had exercised due diligence in trying to locate Carney, her proffered testimony fails to meet the other requirements of evidence sufficient to merit a new trial. The thrust of Carney's affidavits is to undermine the testimony of the government's chief witness, Elizabeth Sault. At trial, however, appellant, his brother, and a friend, Frank Taveres, sought to discredit Sault's testimony. They did so chiefly by offering alternative accounts of the weekend in July of 1975 during which Sault testified she had driven to Connecticut with appellant and Diane Carney. Carney's affidavits similarly attack the credibility of Sault's testimony by giving an alternative

version of the facts. If Carney were to testify at a new trial, her testimony would be material and would not be wholly cumulative. But it would constitute merely a fourth attempt to impeach a witness whose credibility was already called into question by the testimony of three other witnesses.

■ The most compelling reason for affirming the district court's denial of a new trial is that even if Carney were to testify, there is not a sufficient probability that a jury would reach a verdict of acquittal. Sault's testimony, bolstered by taped conversations between her and appellant immediately before his arrest, provided ample evidence under the statute to convict appellant. Only if the jury were to conclude that Sault was lying would an acquittal be likely. Since the jury chose to believe Sault in spite of the testimony of three defense witnesses (including appellant) that directly contradicted her, we do not see how the addition of Carney's testimony "would probably produce an acquittal". Appellant cites the case of *United States v. Lipowski*, 423 F.Supp. 864, 867 (D.N.J.1976), in which the district court granted a new trial because the new evidence, which impeached an already-impeached key government witness, "could have been the proverbial 'straw that broke the camel's back'" with respect to the witness's credibility. If the district court had reached such a conclusion here based on its assessment of the testimony presented at trial, we would hesitate to reverse. But the court made no such finding, and we hold that its omission to do so was not an abuse of discretion.

■ Nor does Carney's evidence demonstrating that appellant did not pay for the rental car supposedly used to transport Sault across state lines meet this test. When the rental records indicating that appellant had paid a portion of this bill were introduced at trial, the witness from the rental agency testified that the receipt bearing appellant's name might have been for a different vehicle. On cross-examination, appellant's counsel made clear to the jury the unreliability of this link between

appellant and the rental car described by Sault. The records appellant seeks to introduce as new evidence would merely be further, albeit conclusive, refutation of an already discredited piece of evidence that was at most corroborative of a portion of Sault's testimony. We see little chance that introduction of this evidence at a new trial would result in an acquittal.

Since appellant has alleged that the testimony of both Sault and the rental agency recordkeeper was perjured, a less stringent probability-of-reversal test, announced in *Larrison v. United States*, 24 F.2d 82 (7th Cir. 1928), is arguably applicable in this case. In *Larrison*, the Seventh Circuit stated that when the motion for new trial is based on an allegation that a material witness testified falsely at trial, a new trial should be granted if: (1) the court is "reasonably well satisfied" that the testimony was false, and (2) without the false testimony the jury "*might* have reached a different conclusion." *Id.* at 87. Although dicta in at least one of our opinions suggests that this circuit has not decided whether to apply the *Larrison* rule, *see In re United States, supra*, 565 F.2d at 173 n. 3, we have suggested that the rule is applicable in cases in which the new evidence demonstrates that the testimony in question was deliberately false. *See Pelegrina v. United States, supra*, 601 F.2d at 21; *United States v. Street*, 570 F.2d 1, 4 (1st Cir. 1977); *United States v. Strauss*, 443 F.2d 986, 989–90 (1st Cir.), *cert. denied*, 404 U.S. 851, 92 S.Ct. 87, 30 L.Ed.2d 90 (1971).

■ The threshold for granting a new trial under *Larrison* is that the trial judge be satisfied that the testimony was perjured. Although the district judge did not so state, we find it inconceivable that he believed Sault's testimony to be perjured. Since her testimony was essentially the government's entire case, under any test the judge would have awarded a new trial if he believed her story to be a fabrication. The district judge did not hold a hearing at which he could evaluate Carney's credibility. But he did observe Sault's demeanor during her extensive direct and cross-exam-

ination. We defer to the trial judge's assessment of the credibility of Sault's testimony. With respect to the rental agency recordkeeper's testimony, even though Sault may have been incorrect in attributing certain payments to appellant, the record does not support appellant's assertion that she perjured herself.

*Affirmed.*