USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 93-1258 UNITED STATES OF AMERICA, Appellee, v. DAVID SEPULVEDA, Defendant, Appellant. ____________________ No. 93-1259 UNITED STATES OF AMERICA, Appellee, v. EDGAR SEPULVEDA, Defendant, Appellant. ____________________ No. 93-1260 UNITED STATES OF AMERICA, Appellee, v. WILLIAM D. WALLACE, Defendant, Appellant. ____________________ No. 93-1261 UNITED STATES OF AMERICA, Appellee, v. EDWARD W. WELCH, JR., Defendant, Appellant. ___________________ No. 93-1262 UNITED STATES OF AMERICA, Appellee, v. KEVIN CULLINANE, Defendant, Appellant. ____________________ No. 93-1263 UNITED STATES OF AMERICA, Appellee, v. CHRISTOPHER DRIESSE, Defendant, Appellant. ____________________ No. 93-1280 UNITED STATES OF AMERICA, Appellee, v. RICHARD LABRIE, Defendant, Appellant. ___________________ No. 93-1281 UNITED STATES OF AMERICA, Appellee, v. SHANE WELCH, Defendant, Appellant. ____________________ -2- No. 93-1282 UNITED STATES OF AMERICA, Appellee, v. ERNEST F. LANGLOIS, Defendant, Appellant. ___________________ No. 93-1283 UNITED STATES OF AMERICA, Appellee, v. TONY ROOD, Defendant, Appellant. __________________ No. 93-1284 UNITED STATES OF AMERICA, Appellee, v. CHERYL T. JOHNSON, Defendant, Appellant. __________________ No. 93-1285 UNITED STATES OF AMERICA, Appellee, v. ARLINE S. WELCH, Defendant, Appellant. ___________________ -3- APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Shane Devine, U.S. District Judge] ___________________ ____________________ Before Selya, Cyr and Boudin, Circuit Judges. ______________ ____________________ David H. Bownes for appellant David Sepulveda. _______________ Julia M. Nye for appellant Edgar Sepulveda. ____________ Stephen A. Cherry for appellant Edward W. Welch, Jr. _________________ Kevin M. Fitzgerald for appellant Arline S. Welch. ___________________ Paul J. Haley for appellant Shane Welch. _____________ Michael J. Ryan for appellant Kevin Cullinane. _______________ John P. Rab for appellant Christopher Driesse. ___________ Robert P. Woodward for appellant Cheryl T. Johnson. __________________ Mark H. Campbell for appellant Richard Labrie. ________________ Paul J. Garrity for appellant Tony Rood. _______________ Matthew J. Lahey for appellant William D. Wallace. ________________ Julie L. Lesher for appellant Ernest F. Langlois. _______________ Terry L. Ollila, Special Assistant United States Attorney, with ________________ whom Peter E. Papps, United States Attorney, was on brief for the _______________ United States. ____________________ December 30, 1993 ____________________ -4- BOUDIN, Circuit Judge. On June 3, 1991, a jury ______________ convicted the 12 defendants in this case of conspiracy to possess cocaine with intent to distribute; one of the defendants, David Sepulveda, was also convicted on a continuing criminal enterprise count. 21 U.S.C. 846, 848. On December 10, 1992, the defendants filed a post-trial motion seeking dismissal or a new trial based on newly discovered evidence. The district court denied the motion in a decision filed February 25, 1993. The defendants appealed separately from the judgments of conviction and from the denial of the post-trial motion, and the cases were consolidated for oral argument. In United States v. Sepulveda, No. 92-1362, et al. (1st _____________ _________ _____ Cir., Dec. 20, 1993), this court has affirmed the convictions of 10 of the 12 defendants, but vacated two of the sentences and remanded those cases for resentencing.1 That decision sets forth in detail the factual background of the case but addresses only issues presented on the original appeals from the convictions. In this opinion, we consider the appeals challenging the denial of the defendants' post-trial motion. We conclude that the district court properly denied the ____________________ 1In United States v. Sepulveda, Nos. 92-1368 and 92-1370 _____________ _________ (1st Cir. 1993), filed simultaneously with this opinion, this court has affirmed the convictions of the remaining two defendants but remanded one of the two cases for resentencing. -5- -5- motion and that neither a new trial nor a dismissal of the cases was warranted. Among the more than 30 witnesses who testified for the government at the trial was Joseph Baranski. Baranski testified that he had dealt in cocaine as a user and a retailer and that David Sepulveda had been one of Baranski's sources of supply. Baranski described journeys with David Sepulveda to secure drugs in Nashua, New Hampshire, and estimated that he had bought from him 50 to 60 times in the period 1985-1986. Baranski said that co-defendant Edgar Sepulveda sometimes participated in the trips. Baranski also made brief incriminating references to several other defendants, such as Cullinane and Langlois. The former, said Baranski, supplied one of Baranski's other sources of drugs, and the latter was an enforcer for David Sepulveda. At trial defense counsel managed to impair Baranski's credibility rather effectively. Baranski denied making any deal with the government that might explain why he was delivering testimony that incriminated him as well as several of the defendants. Instead, he said he was testifying out of friendship with James Noe, who had previously been a business partner with Baranski both in operating a compact disc store in Manchester, New Hampshire, and in cocaine trafficking. Baranski said that Noe, who was also a witness, had asked him to testify and that he had obliged. -6- -6- Asked whether he had received any compensation from the government, Baranski said that he had been bought a diet soda. The assistant United States attorney then advised defense counsel that records of the Drug Enforcement Administration showed that Baranski had been paid $500 in 1986 and again in 1988 for assisting it in drug arrests or prosecutions. Baranski was recalled for further cross- examination and made to admit the more recent payment; the earlier one he said he did not recall. His testimony included other improbable failures of recollection. Following the trial and the resulting convictions, defense counsel uncovered a sworn complaint dated September 15, 1992, that Baranski had filed in his own lawsuit against the State of New Hampshire. In that document, Baranski described a raid by New Hampshire state police conducted on February 10, 1988, on Baranski and Noe's compact disc store in Manchester. There the police seized cocaine and about $20,000 in cash. Baranski's complaint said that he had no knowledge of the drug dealing and that all but $1,700 of the funds were proceeds of legitimate business interests. The complaint went on to say that the law enforcement officers had told Baranski that the bulk of the seized money would not be returned to him unless he was "willing to work it off." Baranski, according to the complaint, then "reluctantly agreed to assist the state in its anti-drug -7- -7- operations. Since the date of the seizure Mr. Baranski has assisted the state of New Hampshire." Baranski's complaint said that the state had returned $6,000 of the money to him but declined to return the rest. The complaint sought "the balance" of the money as an unconstitutional taking of property.2 In their motion filed on December 10, 1992, the defendants argued that the information set forth in Baranski's complaint was newly discovered evidence of great significance. The motion claimed that the information constituted Brady material of which the prosecution knew, or _____ should have known, either directly or through its agents.3 Defense counsel charged the government with misconduct and argued that during his testimony Baranski had concealed his relationship with law enforcement authorities and his compensation arrangements concerning the seized money. The remedy, defendants urged, was either dismissal of the cases or a new trial. ____________________ 2Based on this information, defense counsel then searched the state court records pertaining to the search warrant that had authorized the raid of February 10, 1988. A state police property receipt showed that the amounts specified in Baranski's complaint had indeed been seized. 3Brady v. Maryland, 373 U.S. 83 (1963), is the standard _____ ________ statement of the prosecutor's obligation to turn over exculpatory material. In Giglio v. United States, 405 U.S. ______ _____________ 150 (1972), the Supreme Court said that the obligation includes evidence that would impeach the credibility of government witnesses. -8- -8- A flurry of further filings followed. The prosecutors denied that they or the case agents assisting them had during the trial any knowledge of an arrangement between Baranski and the state police for him to cooperate with law enforcement authorities. The government also argued that the additional impeaching effect of such information, if true, would not conceivably have altered the outcome of the trial, given the limited role of Baranski's testimony and the parade of witnesses against the defendants. Defense counsel filed a broad-gauged motion to produce including all materials related to any agreements with Baranski or Noe as to the return of the seized money. On February 25, 1993, the district court denied the motion for dismissal or a new trial. It ruled that the record provided an adequate basis for resolving the motion. The court pointed out that Noe had testified at trial and disclosed the search of his business premises in the February 1988 raid; since the records of the raid were not sealed, the court said that defense counsel, knowing of the raid, could have secured the information about the funds seizure themselves. Accordingly, the court declined to describe the evidence as "newly discovered," implying that due diligence by defense counsel would have uncovered the information in time for trial. -9- -9- The court also said that Baranski's own trial testimony had shown him to be a witness of "dubious" credibility. The additional information provided by the Baranski state court complaint was, at most, additional impeaching evidence. The court said that the additional evidence if presented to the jury would not likely have altered the outcome of the trial, so that the defendants had failed to make the minimum necessary showing for a new trial. Indeed, the district court indicated that there was no reasonable possibility that the evidence would have had altered the outcome. We agree with the district court that even the complete discrediting and elimination of Baranski's testimony would not have changed the outcome in this case, and that alone is basis enough to affirm the court's denial of the motion. The defense may have a plausible argument that even if a diligent pre-trial search had uncovered the state police records of the search and seizure of the funds, these facts would not have disclosed the supposed "work it off" arrangement alleged in Baranski's complaint. Nevertheless, as we explain below, new trials based on newly discovered evidence, or on evidence withheld by the prosecution, require specified showings as to the likelihood of a different result. The defense has not made those showings. We start by putting to one side any claim that the government engaged in deliberate misconduct. The prosecutors -10- -10- represented that neither they nor any of the case agents were aware of any deal between Baranski and the New Hampshire authorities that Baranski would regain seized funds by cooperating with the state or anyone else. The district court accepted this representation, and nothing said in the defense briefs gives us any reason to question it or to approve the fishing expedition proposed by the defense motion to produce. What we have is evidence that might have been useful to defense counsel in seeking further to discredit Baranski. Primarily, his state court complaint, if believed, suggests a continuing link with state law enforcement authorities that _____ endured during the trial of this case and a desire to curry favor with state authorities in order to recover more of his funds. It is not apparent that helpful testimony by Baranski in this federal prosecution would have been treated as cooperation by the state or facilitated the recovery, but defense counsel could have cross-examined on this point and the jury might have believed that Baranski would benefit from his testimony. Further, information derived from the state court complaint might have been used to bolster the impression that Baranski was lying at trial in his vague and equivocal statements about his prior links with law enforcement. It is not clear that the state court complaint, or for that matter -11- -11- the two $500 payments by DEA to Baranski for earlier cooperation, are literally inconsistent with Baranski's trial testimony.4 Still, as with the $500 payments from DEA, Baranski's failure to disclose the alleged arrangement with the state police would probably have been portrayed as discrediting, and the jury might have drawn such an inference. Thus, we have no difficulty in regarding the evidence as potentially useful to the defense, although less damning than the defense brief suggests. The difficulty for the instant appeals starts with the reasonably high barriers erected by case law when a defendant seeks a new trial based on newly discovered evidence. If it is new evidence unconnected with the government, then--other requisites aside--the evidence must create an actual probability that an acquittal would have resulted if the evidence had been available. United ______ States v. Slade, 980 F.2d 27, 29 (1st Cir. 1992); United ______ _____ ______ States v. Wright, 625 F.2d 1017, 1019 (1st Cir. 1980). ______ ______ Where the government possessed the evidence but did not disclose it, a statement of the rule is more difficult, in part because the leading Supreme Court case produced two ____________________ 4Baranski's reference to a diet soda was made in response to rather loosely worded questions. The two $500 payments were apparently for his assistance on prior occasions, and the defense brief points to no clear evidence that Baranski had any deal with any law enforcement agency as to this case, or received any compensation apart from the ____ diet soda for his testimony in this case. ____ -12- -12- plurality opinions. United States v. Bagley, 473 U.S. 667 ______________ ______ (1987). The usual locution, taken from Justice Blackmun's opinion in Bagley, is that the nondisclosure justifies a new ______ trial if it is "material," it is "material" only if there is "a reasonable probability" that the evidence would have changed the result, and a "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." Id. at 682. ___ This somewhat delphic "undermine confidence" formula suggests that reversal might be warranted in some cases even if there is less than an even chance that the evidence would produce an acquittal. After all, if the evidence is close and the penalty significant, one might think that undisclosed evidence creating (for example) a 33 percent chance of a different result would undermine one's confidence in the result. And while Bagley appears to give little ______ weight to other factors--such as the degree of fault on the prosecutor's part and the specificity of the defense request- -it is not entirely clear that these variables must be ignored. Cf. Bagley, 473 U.S. at 680-82 (Blackmun, J.) and ___ ______ 685 (White, J.). In all events, we need not wrestle with these uncertainties in this case. We will assume arguendo (but ________ with little basis in this record) that the federal prosecutors or their agents knew or should have known of the -13- -13- information in question. Nevertheless, we agree with the district court that the likelihood of a different outcome, if the additional information had been available to defense counsel, is extremely slight and does not remotely undermine our confidence in the verdicts. Thus, whichever standard is applied--whether for newly discovered evidence or negligently withheld evidence--the result in this case is the same.5 The only important testimony offered by Baranski against any of the defendants concerned the Sepulvedas' own trafficking and Baranski's trips with them while both, or in some cases David Sepulveda alone, obtained cocaine for Baranski in Nashua, New Hampshire. Quite similar testimony, however, was provided by Noe himself. It is not apparent why Baranski's self-described cooperation with state authorities (even if true) discredits Noe's testimony.6 In any event, other witnesses testified to various cocaine collection trips ____________________ 5Neither our decisions nor those of other circuits have been sympathetic to new trial claims based solely on the discovery of additional information useful for impeaching a government witness, e.g., United States v. Formanczyk, 949 ____ _____________ __________ F.2d 526, 531 (1st Cir. 1991); United States v. Burroughs, ______________ _________ 830 F.2d 1574, 1578-79 (11th Cir. 1987), although we do not read the cases to say that such evidence can never be sufficient. 6A New Hampshire state police receipt, apparently located by the federal prosecutors after this trial and provided to defense counsel, indicates that $10,000 of the seized funds were returned to Noe on February 12, 1990, two days after the raid. There is no basis for inferring that this return of funds was contingent on, or in any way related to, Noe's testimony in this case which occurred more than a year later. -14- -14- by the Sepulvedas, and there is no serious basis for doubting that they occurred. The defendants assert that Baranski and Noe furnished a critical link in the evidence by establishing the Sepulvedas' activities in 1985 and 1986--the principal period of these witnesses' trips with the Sepulvedas--so that these activities could be connected to the drug trafficking of the Sepulvedas in 1987 and thereafter. This, say the defendants, helped the government establish the single conspiracy covering the entire period as charged in the indictment. But in fact another drug dealer witness, Michael Lacerte, described his drug dealings with David Sepulveda in 1985 and 1986, and his testimony was corroborated in different respects by various law enforcement agents. The "critical link" argument is inventive but not persuasive. Defendants argue for a more favorable--that is, less demanding--test of likelihood that the outcome would have been different if the new information had been available, citing our decision in United States v. Wright, 625 F.2d 1017 _____________ ______ (1st Cir. 1990). There, the court described the ordinary requisites for a new trial based on newly discovered evidence, including the requirement that the defendant show that the new evidence would probably have altered the result. However, Wright went on to say that where a defense witness ______ is shown by post-trial evidence to have testified falsely, it -15- -15- may be enough to justify a new trial for the defendant to show that the result "might" have been different without the false testimony. Id. at 1020.7 ___ The defendants, as already noted, overstate the force of the new information: it does not demonstrate that Baranski gave false testimony at trial. It is not even clear that the new information seriously compromises Baranski's credibility, although it opens a line of attack that defendants might have exploited. We will assume for present purposes that Wright ______ establishes a special rule with a more favorable standard where post-trial evidence shows that an important witness lied at trial. Still, such a rule has no application in this case because the state court complaint does not show that Baranski lied at trial. The appeals from the denial of the post-trial motion have been vigorously pursued by able defense counsel. The joint defendants' brief, and our own reading of all of Baranski's trial testimony, confirm the trial judge's assessment that Baranski's credibility was dubious. But almost all the material for making that assessment was available to the jury, and the new information derived from Baranski's state court complaint added very little. In the ____________________ 7Wright derived this "arguably applicable" standard for ______ perjured testimony from a 1928 Seventh Circuit decision, Larrison v. United States, 24 F.2d 82 (7th Cir. 1928). See ________ _____________ ___ 625 F.2d at 1020. -16- -16- end, there is less to the defense argument than first meets the eye, and certainly not enough to "undermine confidence in the outcome." Bagley, 473 U.S. at 682. ______ Affirmed. The stay of mandate previously entered in ________________________________________________________ United States v. Sepulveda, No. 92-1362, et al. (1st Cir., _____________________________________________________________ Dec. 20, 1993), is dissolved. ____________________________ -17- -17-