# United States Court of Appeals

## For the First Circuit

No. 01-2693

KENNETH CONLEY,

Petitioner, Appellee,

v.

UNITED STATES OF AMERICA,

Respondent, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Robert E. Keeton, U.S. District Judge]

Before

Boudin, Chief Judge,
Bownes, Senior Circuit Judge,
and Torruella, Circuit Judge.

S. Theodore Merritt, Assistant U.S. Attorney, with whom, Michael J. Sullivan, United States Attorney, and Ralph F. Boyd, Jr., Assistant Attorney General, Civil Rights Division, United States Department of Justice, were on brief, for appellant.
Saul M. Pilchen, with whom, Robert S. Bennett, Jonice Gray Tucker, and Thomas J. Dougherty, were on brief, for appellee.

July 15, 2002

**BOWNES**, <u>Senior Circuit Judge</u>. This is the third appeal arising from defendant-appellant Kenneth Conley's jury conviction of perjury in violation of 18 U.S.C. § 1623 and obstruction of a grand jury investigation in violation of 18 U.S.C. § 1503. The conviction followed Conley's testimony before a grand jury, which was investigating the alleged beating of plainclothes police officer Michael Cox by other police officers.

This case first came before us on direct appeal after Conley's conviction. We affirmed the conviction and the sentence of thirty-four months, ruling explicitly that the evidence was sufficient to support the conviction. <u>United States</u> v. <u>Conley</u>, 186 F.3d 7, 20 (1st Cir. 1999), <u>cert. denied</u>, 529 U.S. 1017 (2000) (<u>Conley I</u>). Conley then moved for a new trial based on newly discovered evidence, violations of <u>Brady</u> v. <u>Maryland</u>, 373 U.S. 83 (1963), and jury misconduct. The district court granted the motion, finding that a new trial was warranted "in the interests of justice." <u>United States</u> v. <u>Conley</u>, 103 F. Supp. 2d 45, 57-58 (D. Mass. 2000) (<u>Conley II</u>). We reversed, ruling that the district court did not apply the correct legal test. <u>United States</u> v. <u>Conley</u>, 249 F.3d 38, 46-47 (1st Cir. 2001).

The present appeal arises from a petition under 28 U.S.C. § 2255, which Conley filed shortly after our opinion in <u>Conley II</u> had issued. The district court set aside Conley's conviction:

> The Judgment of Conviction under which Petitioner is presently restrained was

-2-

> obtained in violation of the Due Process Clause of the Fifth Amendment to the Constitution of the United States in that exculpatory evidence was withheld from Petitioner during trial, which resulted in a verdict not worthy of confidence.

Conley v. United States, 164 F. Supp. 2d 216, 217 (D. Mass. 2001) (Conley III).  We reverse the court below.

## BACKGROUND

We set forth the factual background and much of the procedural history of this case in Conley I, 186 F.3d at 11-15, and Conley II, 249 F.3d at 40-44, and need not reiterate it.  Only the following points bear emphasis:

In his motion for a new trial pursuant to Fed. R. Crim. P. 33, Conley focused on three pieces of evidence:  the government's failure to disclose Charles Bullard's grand jury testimony; the government's knowing reliance on Richard Brown's perjured testimony that the Boston Police Department had brought drug charges against him in retaliation for the testimony he gave at the civil trial; and the government's failure to disclose the transcript of an interview of Officer Richard Walker by the Internal Affairs Division (IAD) of the Boston Police Department, in which Walker made a tentative photo identification of the tall white officer who chased and arrested Brown as an officer other than Conley.

The district court's opinion on this motion analyzed these three pieces of evidence.  After setting forth the standard

-3-

for a new trial based on newly discovered evidence, United States v. Wright, 625 F.2d 1017, 1019 (1st Cir. 1980), and a prosecutor's obligation to disclose exculpatory evidence, Brady, 373 U.S. at 87, it considered the separate and cumulative effect of the evidence. Conley, 103 F. Supp. 2d at 51-55. The district court determined that the government's failure to disclose Bullard's grand jury testimony did not violate Brady, and that Officer Walker's IAD interview transcript was "inconclusive as to the government's duty of disclosure and defense counsel's duty of disclosure and defense counsel's diligence." Conley II, 249 F.3d at 44. The court went on to frame two questions for its consideration:

> [Question One:] Did the prosecution have and withhold information from defense counsel that would have led a reasonable person to expect that a civil trial would occur, similar to the civil trial that did in fact occur after the criminal conviction and sentence in this case, and that the testimony at the civil trial would be substantially as we now know it was in fact?

> [Question Two:] If so, were defense counsel so severely impeded in their preparation of an overall defense strategy and in the performance of the function of cross-examination of those particular witnesses, out of the larger number of police officers, including both uniformed and undercover officers, who were in the vicinity of the brutal beating of Michael Cox, an undercover Boston police officer, by a uniformed Boston police officer, that in the interests of justice a new trial should be allowed?

103 F. Supp. 2d at 57-58.

-4-

The district court answered the first question in the affirmative. The second question, it stated,

> cannot be determined as a matter of law, under the applicable legal standard explained in Part III of this opinion [discussing Wright and Brady, inter alia]. Instead, in the unique circumstances of this case, <u>I conclude that the determination to allow or not to allow a new trial is one committed to an exercise of discretion by the court to which the legal system assigns responsibility for making the determination</u>.

Id. at 58 (emphasis added). The district court then used the discretion it had given itself to order a new trial "in the interests of justice." Id.

In our review of the district court's opinion on Conley's motion for a new trial, we discussed the requirements for a new trial based on newly discovered evidence and/or violation of Brady. Conley II, 249 F.3d at 44-45. We concluded that the district court erred in allowing a new trial "in the interests of justice" instead of applying either the Wright or Brady standards:

> As we explained supra, a new trial may be ordered in this case only if the standards set forth in Wright and/or Brady are satisfied. Both Wright and Brady require a showing that the evidence was material and that the defendant was prejudiced to some degree. We must defer to the district court's explicit findings as to the Bullard and Brown testimony, as well as to its statement that prejudice could not be determined upon a consideration of the evidence as a whole. Therefore, there is no basis for remanding this matter, and we **REVERSE** the district court's order.

-5-

Conley II, 249 F.3d at 47 (internal citations omitted).  We directed that the district court's sentence, which we had affirmed in Conley I, be executed.  Id.

Only one week after we issued Conley II, Conley brought a motion to set aside conviction under 28 U.S.C. § 2255.  Again, the district court held that Conley was entitled to relief from judgment.  Conley III, 164 F. Supp. 2d at 223-24.

In Conley III, on appeal before us now, the district court made the following findings:

> (1) Richard Walker testified at the trial of defendant Conley that Walker went through a hole in the fence and made his way to the bottom of an incline;
>
> (2) when at the bottom of the incline he saw two men standing in the street, one tall (six feet or six feet two) and the other shorter (about . . . five nine);
>
> (3) the prosecutor used this evidence in his closing to suggest that the taller was Conley;
>
> (4) during testimony of March 27, 1995 to the Internal Affairs Division (IAD) of the Boston Police Department, Walker was shown a group of photographs and with some uncertainty selected two as persons at the bottom of the incline, neither of whom was Conley;
>
> (5) defendant Conley claims that this evidence was unavailable to Conley and his attorney at the criminal trial;
>
> (6) this and other material evidence came out in open court in the later trial of a civil action brought by Michael Cox against several officers, including the defendant Conley, in December 1998, some six months after the

defendant was convicted in the criminal trial; and

(7) even though the testimony given at the December 1998 civil trial could not have been withheld by the prosecutor in the criminal trial, because it did not then exist, the defendant Conley argued in his motion for new trial and continues to press the argument now that the prosecutor had withheld, during and before the criminal trial, information that the prosecutor then had about the IAD proceedings, and if the prosecutor had made that information available to Conley and his attorney in time for use during the criminal trial, it would have made a material difference in the defense strategy, including cross-examination.

Id. at 221-22.[1]  The court made no findings concerning the other evidence at issue in its earlier opinion, i.e., the testimony of Bullard and Brown.

The district court held that the correct legal standard was found in Wright, 625 F.2d at 1019.  Conley III, 164 F. Supp. 2d at 222.  It then restated the same two questions it had formulated in Conley I, set forth supra at page 4.  It held:

The newly discovered evidence, taken together with all the conflicts presented in evidence known to the defense before and during the criminal trial, presents a dramatically more compelling basis for finding that defense counsel's opportunity to present a creditable challenge to the government's case as a whole

---

[1]The court stated that it made these findings on an "enlarged record," suggesting that it was considering more or different evidence than it did in its earlier opinion.  Id. at 222.  Nowhere does the court explain what that evidence is.

> and to cross-examine effectively particular
> witnesses was severely impeded.

Id. at 223.

Based on the factual findings recited supra, the court

concluded that Conley satisfied the elements of the Wright test.[2]

> I conclude that the newly discovered evidence
> is highly probative and neither immaterial nor
> cumulative in nature. Instead, it is evidence
> that strikes at the heart of the prosecution's
> case, one which is largely based on the
> credibility of its witnesses. Indeed, the
> strength of this evidence leads me to find
> that the defendant has met his burden of
> showing a probable result of acquittal in a
> new trial.

Id. The government appeals.

**DISCUSSION**

Under 28 U.S.C. § 2255, a prisoner in federal custody may

petition the sentencing court to vacate, set aside or correct the

sentence on the ground that the sentence was imposed in violation

of the Constitution or laws of the United States. Brackett v.

United States, 270 F.3d 60, 63 (1st Cir. 2001). Claims that

previously have been addressed on direct review, however, may not

be readjudicated collaterally under § 2255 absent equitable

---

[2]Under Wright, the moving party must demonstrate the following
four elements: (1) the evidence claimed to be newly discovered was
unknown or unavailable to the defendant at the time of trial; (2)
failure to learn of the evidence was not attributable to lack of
diligence by the defendant; (3) the evidence is material, and not
merely cumulative or impeaching; and (4) it will probably result in
an acquittal upon retrial of defendant. 625 F.2d at 1019; see also
United States v. Gonzalez-Gonzalez, 258 F.3d 16, 20 (1st Cir.
2001).

-8-

considerations, such as actual innocence or cause and prejudice. Withrow v. Williams, 507 U.S. 680, 721 (1993) (Scalia, J., concurring); see also United States v. Michaud, 901 F.2d 5, 6 (1st Cir. 1990); Tracy v. United States, 739 F.2d 679, 682 (1st Cir. 1984)("[a]bsent an intervening change in the applicable law, issues that have been raised and decided on a motion for a new trial cannot be reconsidered in a subsequent collateral attack" (quoting United States v. Sanders, 723 F.2d 34, 36 (8th Cir. 1983))); Dirring v. United States, 370 F.2d 862, 864 (1st Cir. 1967).

In a related vein, the doctrine of "law of the case" is a prudential principle that "precludes relitigation of the legal issues presented in successive stages of a single case once those issues have been decided." Field v. Mans, 157 F.3d 35, 40 (1st Cir. 1998) (quoting Cohen v. Brown Univ., 101 F.3d 155, 167 (1st Cir. 1996)). "For a bar to exist, an issue must have been actually considered and decided by the appellate court, or a decision on the issue must be necessarily inferred from the disposition on appeal." Id. (internal quotation marks omitted) (quoting Commercial Union Ins. Co. v. Walbrook Ins. Co., Ltd., 41 F.3d 764, 770 (1st Cir. 1994)).

The law of the case doctrine prohibits a litigant from resurrecting an issue decided by the trial court that either has not been challenged on appeal or has been decided on appeal. Id. at 40; United States v. Rosen, 929 F.2d 839, 842 n.5 (1st Cir.

-9-

1991). Another aspect of the doctrine is the "mandate" rule, which requires the district court to follow the ruling of the court of appeals. Field, 157 F.3d at 40. We review an application of the law of the case de novo. Id.

The district court's conclusion in Conley III that the the newly discovered evidence pertaining to Walker satisfied the Wright criteria is foreclosed by these doctrines. First, the district court essentially reversed course as to whether the Walker evidence fulfilled the requirement of prejudice. In its previous decision, it held that the question of prejudice "could not be determined as a matter of law" under the standards set forth in Wright and Brady. 103 F. Supp. 2d at 58. That same evidence, it now says, is sufficient to warrant a new trial under Wright. 164 F. Supp. 2d at 222.[3]

Moreover, the district court's most recent treatment of the Walker evidence is at odds with its previous ruling as to at least one other key element. Earlier, it called Walker's IAD

---

[3]In its opinion in Conley II, the district court discussed in some depth the testimony of Bullard and Brown, and made clear that its holding as to prejudice encompassed the entirety of that newly discovered and/or disclosed evidence. 103 F. Supp. 2d at 51-54. The district court's opinion in Conley III, however, referenced only the Walker evidence as a basis for its allowance of Conley's § 2255 motion. 164 F. Supp. 2d at 221-22. Although it mentioned the Bullard and Brown testimony, it did so only in the context of "Background Criminal Proceedings." Id. at 218. We read Conley III, therefore, as premising its determination of a Wright violation solely on the Walker evidence.

testimony "inconclusive" as to the government's duty of disclosure and defense counsel's diligence. 103 F. Supp. 2d at 55. In Conley III, however, the court held that the Walker evidence satisfied all of the elements of Wright, including, by inference, the requirement that Conley's failure to learn of the evidence was not attributable to his lack of diligence. 164 F. Supp. 2d at 223 (discussing Wright, 625 F.2d at 1019).

In Conley II, we discussed and affirmed the district court's factual findings as to these elements of the Wright test, and instructed the court to carry out Conley's sentence. 249 F.3d at 46-47. That decision binds the district court. See Field, 157 F.3d at 40; Withrow, 507 U.S. at 721. Accordingly, we reverse the district court's order setting aside Conley's conviction.

We know of no additional evidence that would explain the district court's new and contrary conclusions as to prejudice and defense counsel's diligence. While the district court mentions in passing an "enlarged record," it makes no specific findings that support its about-face. Furthermore, the legal claims, although recast in the form of a § 2255 petition, did not differ from the claims before the district court and before us in Conley II. See Tracy, 739 F.2d at 682 (a petitioner is still barred from relitigating the subject matter of claims on collateral review even if he recasts them in different nomenclature). Nor was there any material change in the controlling law following Conley II. See

-11-

id. Hence, we see no reason not to preclude the district court's readjudication of settled issues.

For these reasons, we **REVERSE** the decision of the district court. We remand this case to the Chief Judge of the District Court for the District of Massachusetts with instructions that Conley's thirty-four-month sentence be executed.

**- Dissenting opinion follows -**

BOUDIN, <u>Chief Judge, dissenting</u>.  Conley may or may not be guilty but he is certainly jinxed.  The district court has twice ordered new trials for Conley, each time giving reasons that undercut its own order; and this court is now reversing the district court for the second time.  On this second occasion the panel majority has compounded the district court's mistake with one of its own.

At Conley's trial, three witnesses for the government (Cox, Brown and Walker) testified that Cox chased Brown to the fence and grabbed at Brown unsuccessfully as Brown scaled it and dropped to the other side.  Conley, by contrast, had earlier told the grand jury that he had been close behind Brown and did not see Cox at all.  Whether Conley saw Cox pursuing Brown mattered to the civil rights investigation:  if untrue, Conley's grand jury denial that he had seen Cox wrongly forestalled efforts to have him identify the other police officers who had beaten Cox immediately after the chase under the illusion that Cox was a fleeing suspect.

By convicting Conley, the jury made clear that it accepted the Cox-Brown-Walker version of events.  Although the chase occurred in the early morning hours in confusing conditions, the trial evidence was adequate to support a conviction; and this is so even though the prosecution witnesses were vulnerable[1] and

_____

[1]Brown was a felon testifying against the man who had captured him (Conley).  Cox had been badly beaten and had fairly little

-13-

their evidence was circumstantial as to Conley's guilt (since no one could testify from personal knowledge that Conley had actually seen Cox). Conley was sentenced to just under three years in prison. On direct appeal, this court affirmed. United States v. Conley, 186 F.3d 7 (1st Cir. 1999), cert. denied, 529 U.S. 1017 (2000).

After the affirmance, Conley moved for a new trial under Fed. R. Crim. P. 33. Because this motion was made more than seven days after the verdict, the rule by its terms limited Conley to claims that newly discovered evidence justified a new trial. Under the case law, the burden of showing that the evidence would likely alter the result is ordinarily quite heavy, see United States v. Wright, 625 F.2d 1017 (1st Cir. 1980); it is somewhat less if the new evidence was wrongly withheld by the government in violation of its obligations under Brady v. Maryland, 373 U.S. 83 (1963). Conley made (and continues to make) claims in both categories.

The district court then ordered a new trial, without finding prejudice under either Wright or Brady, instead, it said that a new trial was justified in "the interests of justice," the general test applied where a new trial motion is made within seven days of conviction. See United States v. Conley, 103 F. Supp. 2d

recall about most of the events for several months after. As for Walker, much of the "new evidence" now at issue aimed at impeaching him.

45 (D. Mass. 2000).  On appeal by the government, this court held that the district court could not use the general "interest of justice" standard to bypass the established Wright and Brady prejudice requirements for new trials.  See United States v. Conley, 249 F.3d 38 (1st Cir. 2001).

Conley then filed the present motion in the district court under 28 U.S.C. § 2255, urging essentially the same newly discovered evidence as the basis for a collateral attack on his conviction.[2]  In its new decision, now before this court, the district court granted the section 2255 motion, setting aside the conviction and ordering a new trial.  See Conley v. United States, 164 F. Supp. 2d 216 (D. Mass. 2001).  In doing so, the district court said that it was applying the Wright test, mandated by this court's earlier decision on the new trial motion.  See id. at 222. The district court then found that the Wright criteria were satisfied by new evidence relied upon by Conley; this included a ruling that the new evidence was so powerful that it would probably cause an acquittal on retrial.  See id.

---

[2]Nowhere is the evidence neatly catalogued but at various points Conley has relied on six pieces of alleged new evidence under Wright, Brady or both:  (1) post-trial testimony of a security guard named Charles Bullard contradicting key prosecution witnesses; (2) an item of evidence thought useful to impeach Brown; and (3) four different items of evidence that might be used to impeach Walker.

On the government's present appeal, the panel majority now reverses the district court, this time relying on the law of the case doctrine instead of addressing Conley's claims on the merits.  Law of the case doctrine has two branches:  one provides that a court must respect and follow its own prior rulings made at a prior stage in the same case; the other branch——sometimes known as the mandate rule——far more stringently precludes a lower court from contravening the prior rulings of a higher court made at an earlier stage of the same controversy.[3]

Although there are exceptions to the law of the case doctrine, e.g., United States v. Bell, 988 F.2d 247, 251 (1st Cir. 1993), it is unnecessary to invoke them because the doctrine itself does not properly apply on the present facts.  The panel majority begins by asserting that the district court has contradicted itself; the panel opinion says the district court held on the Rule 33 motion that the new evidence did not meet the Wright standard and now in the section 2255 motion the district court holds that it does satisfy Wright.

---

[3]Law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618 (1983); see also NLRB v. Goodless Bros. Elec. Co., 285 F.3d 102, 107 (1st Cir. 2002); United States v. Rivera-Martinez, 931 F.2d 148, 151 (1st Cir. 1991), cert. denied, 502 U.S. 862 (1991); Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp., 72 F.3d 190, 197-98 (1st Cir. 1995), cert. denied, 517 U.S. 1245 (1996).

Although the district court is the author of this confusion, nothing in its prior Rule 33 decision said plainly that the Wright or Brady standard could not be met. Rather, in retrospect, it is quite possible that the district court aimed to bypass Wright, believing that it had a broader power to decide the new trial issue under the "interest of justice" standard "in the unique circumstances of this case." 103 F. Supp. 2d at 58. Nothing else explains its present insistence that, having been told by this court to apply Wright, it now concludes that Wright warrants a new trial.

The truth is that, so far as Wright and Brady are concerned, the district court's earlier Rule 33 opinion is impenetrable. Certainly in light of its later actions, no one can say confidently just what it meant in saying that "the second question stated above cannot be determined as a matter of law," 103 F. Supp. 2d at 58, the cryptic statement relied on by the panel majority. It is one thing to hold the district court to something it clearly said; it is quite another to invoke law of the case on the basis of a debatable reading of the district court's opinion, a reading implicitly disclaimed by the very judge who wrote the opinion.

Still less does the district court's new ruling as to Wright contradict the so-called mandate rule, mainly relied on by the panel majority. The "mandate" itself—effectively, the

-17-

directive embodied in this court's earlier decision——ordered only that the district court deny the new trial motion under Rule 33, which it did. This by itself does not preclude a section 2255 proceeding. At most it simply precludes the district court from revisiting a substantive issue decided by this court on the first go-around. See Knapp, 72 F.3d at 197-98.

The district court's new ruling under section 2255 might contradict this court's decisions on the Rule 33 appeal if this court had itself earlier considered and rejected the Wright claim on the merits, but this court did not do so. Instead, believing (it now appears mistakenly) that the district court had rejected the Wright claim on the merits, and that that ruling was not being challenged, this court thought that no remand for further consideration was necessary after the panel rejected the district court's "interests of justice" rationale for a new trial.

Where, then, does this leave matters? In principal, it means that the panel ought to address the merit of Conley's 2255 claims rather than rely on law of the case. Unfortunately for Conley, his Wright claim, whatever its merit, is not available on collateral attack. The district court was mistakenly concerned that consideration of Wright might violate the mandate rule, Conley v. United States, No. 01-10853 (D. Mass. July 30, 2001), but that was the wrong concern: the correct one is that new evidence claims

-18-

under Wright are cognizable only in post trial motions for a new trial and on direct review of such decisions.

On direct appeal, any claim of error can be raised; but section 2255 is a surrogate for habeas. See Davis v. United States, 417 U.S. 333, 343 (1974). Powerful evidence of innocence satisfies one of the new gatekeeper requirements under the amended habeas statute, 28 U.S.C. § 2255; but a traditional habeas ground is required once one gets through the gate. Merely to claim that new evidence casts doubt, even grave doubt, on the correctness of a final judgment of conviction is not a ground for relief on collateral attack. See Herrera v. Collins, 506 U.S. 390, 400 (1993); United States v. Evans, 224 F.3d 670, 673-74 (7th Cir. 2000).[4]

This leaves open Conley's claim under Brady, a settled basis for collateral attack. See Barrett v. United States, 965 F.2d 1184, 1189 (1st Cir. 1992). Indeed, claims based on new evidence wrongfully withheld can prevail on a lesser showing of prejudice (because they assume government misconduct). See United States v. Gonzalez-Gonzalez, 258 F.3d 16, 20 (1st Cir. 2001). In

---

[4]It is not clear if and when a habeas claim might ever be based simply on proof of actual innocence, see Herrera, 506 U.S. at 417; but Conley is not within miles of such a showing. At best, the newly discovered evidence, adding everything together, simply increases in some measure—how much is debatable—the likelihood that at a new trial a jury might find reasonable doubt of guilt and so acquit.

its latest decision, the district court invoked <u>Wright</u> and said expressly "I do not consider further the <u>Brady</u> test." <u>Conley</u> v. <u>United States</u>, 164 F. Supp. 2d 216, 222 (D. Mass. 2001). Nor did the district court squarely address and resolve the merits of the <u>Brady</u> claim at any earlier stage.

Thus, Conley is entitled to a decision on the <u>Brady</u> issue either through a remand to the district court, which is the customary approach, or by having this court address and decide that issue. Both courses would involve delay; but in that respect this case sets no record. In all events, one course or the other is simply Conley's right under existing law. Conley might well lose his <u>Brady</u> claim, whose assessment requires reconstructing a good deal of trial history; but that is no excuse for depriving him of the opportunity.