**UNITED STATES of America, Plaintiff,**

v.

**Fernando Montilla RIVERA, et al., Defendants.**

**No. CRIM. 95–085 (DRD).**

United States District Court, D. Puerto Rico.

May 15, 1998.

Antonio R. Bazan–Gonzalez, U.S. Attorney's Office, District of P.R., Hato Rey, PR, for plaintiff.

Marlene Aponte–Cabrera, Hato Rey, PR, Joseph C. Laws, Federal Public Defender, Hato Rey, PR, Gregorio Limá, Bayamon, PR, Javier A. Morales–Ramos, San Juan, PR, Carlos Noriega–Rodriguez, Hato Rey, PR, Edgardo L. Rivera–Rivera, San Juan, PR, Jose C. Romo–Matienzo, Hato Rey, PR, for defendants.

## OPINION AND ORDER

DOMINGUEZ, District Judge.

The First Circuit Court of Appeals in an opinion in the above captioned case remanded the case *United States v. Montilla–Rivera,* 115 F.3d 1060 (1st Cir.1997), for proceedings consistent with the opinion. This trial court had previously determined that the sworn statements of codefendants Miguel Calderón–Salmiento, hereinafter called "Calderón," and Ramón Zorrilla, hereinafter called "Zorrilla," submitted to the court about one year after trial did not qualify as "unknown and unavailable at the time of the trial" under Rule 33 of the Federal Rules of Criminal Procedure. The trial court reasoned that said defendants were available during trial, were subpoenaed by defendant and hence known. The codefendants Calderón and Zorrilla refused to testify at the trial based on the exercise of their Fifth Amendment Privileges. The Court of Appeals has ordered the court to reconsider and suggested the holding of a hearing.

> We follow our precedent in *United States v. Abou–Saada,* 785 F.2d 1 (1st Cir.1986) and remand to the District Court to reconsider the motion of a new trial and to hear evidence. There is no suggestion that such hearings are required in the usual course; they are not .... We think it wiser here for the district court to hold

such a hearing given the unusual combination of circumstances here .... We believe the district court should, after a hearing, reconsider whether, as Rule 33 provides 'the interest of justice require a new trial' ... the present opinion by no means confers any automatic right in such a case to a new trial or a hearing.

*Montilla-Rivera,* 115 F.3d at 1067.

The court held an evidentiary hearing as suggested by the appellate court on January 27 and 29, 1998 (Docket No. 129) (proceedings were delayed from mandate when defendant requested a change of counsel). Defendants requested time to file a post hearing memorandum which was filed on March 3, 1998 (Docket No. 130). The United States filed its brief on March 17, 1998 (Docket No. 131). The court is now ready to rule on the matter.

██ "A motion for a new trial based on newly discovered evidence will not be allowed unless the movant establishes that the evidence was (i) unknown or unavailable at the time of trial, (ii) despite due diligence, (iii) material, (iv) likely to result in an acquittal upon retrial." *United States v. Tibolt,* 72 F.3d 965, 971 (1st Cir.1995), *cert. denied,* 518 U.S. 1020, 116 S.Ct. 2554, 135 L.Ed.2d 1073 (1996). *See also United States v. Montilla-Rivera,* 115 F.3d at 1064–65; *United States v. Wright,* 625 F.2d 1017, 1019 (1st Cir.1980); *United States v. Rothrock,* 806 F.2d 318, 322 (1st Cir.1986); *United States v. Natanel,* 938 F.2d 302, 313 (1st Cir.1991); *United States v. Benavente–Gómez,* 921 F.2d 378, 382 (1st Cir.1990). If any of the required factors are missing the request under Rule 33 must be denied. *Natanel,* 938 F.2d at 313. Further, "a motion for a new trial based upon alleged newly discovered evidence 'is not regarded with favor and should only be granted with great caution.'" *United States v. Muldrow,* 19 F.3d 1332 (10th Cir.1994), *cert. denied* 513 U.S. 862, 115 S.Ct. 175, 130 L.Ed.2d 110 (1994) (quoting *United States v. Kelley,* 929 F.2d 582, 586 (10th Cir.), *cert. denied* 502 U.S. 926, 112 S.Ct. 341, 116 L.Ed.2d 280 (1991)).

The court reiterates the facts as the jury could have found at the original trial as narrated by the Court of Appeals:

On March 22, 1995, Eladio Valerio, a Drug Enforcement Agency confidential informant, made a phone call in search of drugs. He called Miguel Calderon–Salmiento ("Calderon"), who would later become a codefendant in this case. In a taped conversation, which was clearly about arranging a drug purchase, Calderon told the informant, "Come on down here to ... to go over to the mechanic at 12." The informant explained that he could not "come on down" that day because the funds were not ready. There were several other taped conversations about the deal. At that time, the mechanic working at the mechanic's shop to which Calderon referred was Montilla.

A few days later, on March 24, 1995, the informant, wired and accompanied by DEA Agent Domingo Carrasquillo, did meet with Calderon. The informant and Calderon initially met at a service station, where Calderon invited the informant to go "see the mechanic." The informant understood that "by seeing the mechanic," Calderon meant they would go "where the material or the drug was." Agent Carrasquillo went ahead to a shopping center where he expected the drug transaction to take place.

Calderon drove the informant to an auto repair shop, behind the Metreza night club in San Anton, which was within one thousand feet of a public school. The shop was a wooden structure attached at one end to the club and open at the other. There was a small room inside the shop; the repair work took place outside of this room.

At the shop, the informant saw Ramon Zorrilla, who also later became a codefendant in this case, and Montilla. The informant shook hands with them, but did not speak to Montilla. Montilla wore overalls and had grease on his clothes; Zorrilla did not. The four men then went into the small room. Once inside, the dealing began in earnest between the informant, Calderon, and Zorrilla. During these negotiations, Montilla was ten to twelve feet away, just inside the entrance to the room, "watching [and] looking." The informant and the other two negotiated and agreed

on a price of $12,100 per kilogram of cocaine. As Montilla stood at the entrance, still watching, the three other men agreed that if the quality of the initial two kilograms was high, four more would be purchased. At that point, Zorrilla made a call from the room to have the cocaine delivered to the shop, requesting "two shoes." The informant called his "partner," in reality DEA Agent Carrasquillo, to arrange for the exchange of the cocaine for cash. While they waited for the delivery, and with Montilla still at the entrance, Calderon loudly commented on the quality of the cocaine: "[H]ell, pure cocaine." ("Diablo, cocaina pura.") The drugs were delivered to the shop. As Montilla watched, the informant tasted the cocaine and pronounced that it was good and that the "deal was on." The informant went off with Calderon to the shopping center to meet the informant's partner, who had the money. Montilla and Zorrilla stayed behind with the cocaine at the shop.

At the shopping center, the partner showed Calderon the cash. The men agreed that Calderon would return alone to the repair shop, and that ten minutes later, the informant and his partner would bring the money for the exchange. Back at the shop, the "partner" agent told the informant to get out of the car, go into the mechanic's shop, and bring out the people involved in the transaction. The informant went into the small room, told Montilla, Zorrilla, and Calderon that "someone was waiting for them in the car, [and] for them to take the material and give them the money." Zorrilla and the informant approached the car and asked the partner to come into the shop, where they would make the exchange. The partner refused and said the delivery should be made outside. Zorrilla complied and went back into the shop to get the drugs. The three

men—Calderon, Zorrilla, and Montilla— came back toward the street, with Calderon carrying the drugs. Montilla and Zorrilla had moved to where they could watch the transaction from the front of the shop, about thirty feet away from the partner's car. All three men were arrested where they stood when Calderon made the delivery. At the time of arrest, others were in the shop, including the shop owner and a visitor. At no time during the transaction did the informant see Montilla working on a car . . . .

Montilla did not testify at trial. His first witness, the shop owner, testified that Montilla had worked for him there for about a month, that Zorrilla, not Montilla, lived in the room at the shop, and that Montilla had just been doing his job, repairing a car that was to be picked up that day. The owner also said that Zorrilla had worked for him at the shop for over a year, but had not worked there during the previous four months. The owner explained that just before Montilla went outside to the front of the shop where he was arrested, Montilla had said that he was stepping outside to have a soft drink and to smoke. Montilla's second witness, who was visiting the shop during the incident, testified that he had seen Montilla working on a car until he stepped outside to have a cigarette since the owner did not allow smoking inside the shop.

Because Montilla was present when Calderón and Zorrilla were negotiating the deal in the room at the shop and because criminal conspirators do not often "welcome innocent non participants as witnesses to their crimes," *United States v. Batista-Polanco*, 927 F.2d 14, 18 (1st Cir.1991); *United States v. Cuevas-Esquivel*, 905 F.2d 510, 515 (1st Cir.1990), and because there was evidence that Montilla acted as a lookout,[1] the appel-

---

1. This trial court adds that Task Force Agent Waldemar Rodríguez on surveillance during the final transaction testified that at the time of the arrest Montilla was standing acting as a lookout beside a van, Ex. 4E (photograph), on the back part of the passenger side towards the sidewalk besides codefendant Zorrilla (Docket No. 65, VI p. 100–105).

Another agent, Domingo Carrasquillo, testified that upon arriving at the Metreza Night Club, next to the mechanic shop, he advised the informant Eladio Valerio to get out of the car, go into the mechanic's shop and bring the people related to the transaction. Codefendants Calderón and Zorrilla initially came and spoke to the agent and left. Then three people came back to the street where the car was parked: Calderón, Zorrilla

late court found reasonable and sufficient the verdict of guilt rendered by the jury.[2]

> Several inferences from the evidence support the government's position. The first is that Montilla was at the entrance to the small room where he could act as a lookout while the drug deal negotiations were being conducted and was not in the shop repairing cars. The second is that, when the informant told the men it was time to deliver the drugs to his partner, all three men, including Montilla, left the small room to go out toward the car. The third is that Montilla, who did not have the drugs, stopped just outside the shop, and from that vantage watched. He was well-situated to act as a lookout, and an arresting agent thought that was exactly what Montilla was doing.

*Montilla-Rivera,* 115 F.3d at 1064.

The court briefly recites the pertinent facts testified during the Rule 33 motion.

## CO–DEFENDANT MONTILLA'S TESTIMONY

Codefendant Montilla testified that the almost identical affidavits were prepared by an inmate who knew about the law in Petersburg, Virginia. Montilla spoke to him about the case and provided the person all the documents of the case. Said person drafted the affidavits. Montilla did not dictate word for word the contents of the affidavits. "I explained the case, about how I felt the thing had happened." (Docket No. 129 at 205–06.) The affidavits were given to Montilla who, after requesting for the addresses of Calderón and Zorrilla from the case manager, sent them to a girl friend (Angela) in Puerto Rico. She then forwarded the affidavits to Calderón and Zorrilla; upon the return of the affidavits to Angela she delivered them to the counsel. Mr. Montilla did not pay the inmate for his services but cleaned his room for him in gratitude for the services provided. (*Id.* at 208–09).

and Montilla. Calderón was carrying the white plastic bag in his hand (kilos of cocaine). Calderón goes to agent Carrasquillo's car and Montilla and Zorrilla stay near by looking to the side. (Docket No. 65, VI p. 210–211.)

## CO–DEFENDANT CALDERON'S TESTIMONY

Calderón testified that the persons involved in the transaction were Calderón, Zorrilla, Radamés and the informant. Montilla was not part of the transaction. (*Id.* at 93–94). When the deal was originally agreed upon in the room at the shop, the persons in the room were Calderón, Zorrilla and the informant. (*Id.* at 97). When the drug was to be delivered to the informant, Calderón was arrested on the edge of the road; "the informant and the agent were waiting for me." (*Id.*) Calderón "saw when they pulled [Montilla] from underneath in the car that he was working at;" referring to the arrest of Montilla on this date. (*Id.*)

Calderón was going to make a profit of $1,000.00, (Docket No. 129 at 20). As part of the transaction, Calderón was not to give any money to Montilla. (*Id.* 129, VI at 99). Montilla did not know what occurred inside the room the day of the drug transaction. (*Id.*)

As to the affidavit, besides signing the document Calderón, had no input and no participation in the preparation of the affidavit. (*Id.* at 179.)

## CO–DEFENDANT ZORRILLA'S TESTIMONY

Zorrilla's testimony mirrored co-defendant Calderón's declaration. Zorrilla stated that he was involved with Calderón and Radamés (an unindicted co-conspirator) in a two kilo cocaine transaction; Zorrilla called Radamés to bring "two pair of shoes" (two kilos of cocaine). (*Id.* at 15–18; 32). Radamés was also called "the mechanic;" co-defendant Zorrilla is also a mechanic, as well as co-defendant Montilla. (*Id.* at 13, 32). On the date of the transaction, Calderón and the informant arrived first; Radamés arrived with the drugs after being called by Zorrilla. (*Id.* at 24, 38, 46). Zorrilla states that he does not recall Montilla inside the room when the

2. "The evidence is thin, but not so thin as to invalidate the jury's reasonable assessment that Montilla is guilty." *Montilla-Rivera,* 115 F.3d at 1064.

transaction took place between Calderón, Zorrilla, Radamés and the informer. (*Id.* at 47, 89). Calderón and the informer left to get the money; Radamés left and Zorrilla stayed with the drugs. (*Id.* at 48). Calderón returned after about an hour or one and a half hours. (*Id.* at 48). Calderón then took the drug previously under the custody, of Zorrilla to a car outside and Zorrilla was arrested next to a car on the side of the cafeteria. (*Id.* at 53). Montilla was arrested in the shop. (*Id.* at 86–87).

Zorrilla also admitted that he knew Montilla years before the drug transaction, around twelve years prior to the hearing date in 1998. (*Id.* at 11). They knew each other from La Romana in the Dominican Republic. In Puerto Rico, they worked together at the mechanic shop where the drug transaction took place for about one and a half years. (*Id.* at 11). Zorrilla had not worked in the shop for four months prior to the transaction. *Montilla-Rivera*, 115 F.3d at 1063.

## APPLICATION OF THE STANDARD TO THE FACTS OF THE CASE

■ The remand of the Circuit Court did not order the trial court to hold a new trial "the present opinion by no means confers any automatic right ... to a new trial;" *Montilla-Rivera*, 115 F.3d at 1067–but for the court to evaluate whether, "in the interest of justice," standard of Fed. R. Cri. P. 33, a new trial should be held. *Id.* at 1066. "In considering such a motion, the court has broad power to weigh the evidence and assess the credibility of both the witnesses who testified at trial and those whose testimony constitutes "new evidence." *Id.* at 1067 (citing *United States v. Wright*, 625 F.2d 1017, 1019 (1st Cir.1980)). Moreover, "the judge may, of course, use the knowledge he gained from presiding at the trial, as well as the showing made in the motion." *Id.* at 1067 (citing 3 Wright, Federal Practice and Procedure § 557 at 337 (2nd Ed.1982)).

■ The evidence submitted at the Rule 33 hearing complies with three of the four standards required under *Tibolt*, 72 F.3d at 971. The following requirements have been complied: the evidence was: (i) unknown or unavailable at the time of the trial, (ii) de-

spite due diligence and (iii) (the evidence) is material. In the opinion of the undersigned, compliance with these first three criteria is foreclosed by the opinion of the Circuit Court in *Montilla-Rivera*, 115 F.3d at 1064–68. The appellate court expressly held that the testimonies of Calderón and Zorrilla were unavailable and Montilla exercised due diligence. *Id.* at 1066. "There seems little distinction between evidence which a defendant could not present because he did not know of it and evidence which he could not present because the witness was unavailable despite exercising due diligence." *Id.* at 1066. The evidence is further "material" because the new testimony may exculpate the defendant. According to new testimony, Montilla was simply not present in the room where the transaction took place, he did not share the profits and he was arrested in the shop. Hence he was not acting as a lookout.

Compliance with the last criteria, that of "likely to result in an acquittal upon retrial," requires further analysis. In *United States v. Agurs*, 427 U.S. 97, 111, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the Supreme Court set forth a "severe burden [in] demonstrating that newly discovered evidence probably would have resulted in acquittal." The First Circuit has counseled trial courts to be satisfied that "the new evidence would 'probably' bring about a different result." *United States v. Street*, 570 F.2d 1, 4 (1st Cir.1977).

■ This court is not satisfied that the criteria of "likely to result in acquittal at retrial" has been met. The court explains. The court starts with the "general skepticism covering [the] statements" of Zorrilla and Calderón. *Montilla-Rivera*, 115 F.3d at 1067. "Such statements [by sentenced co-defendants] would be untrustworthy and should not be encouraged." *Id.* at 1067 (citing and adopting *United States v. Reyes–Alvarado*, 963 F.2d 1184, 1188 (9th Cir. 1992)). Further affidavits produced after long delays coming from inmates have been classified as "suspect" in a concurrent opinion of the Supreme Court. *Herrera v. Collins*, 506 U.S. 390, 113 S.Ct. 853, 872–73, 122 L.Ed.2d 203 (1993) (O'Connor J. concur-

ring).[3] In the instant case, the origins of the gemini type affidavits do not mitigate the "suspect" character of the co-defendants' submittal produced about one year after conviction. Second, both Zorrilla and Calderón, when pleading guilty at the plea, unequivocally accepted that Montilla was an aider and an abetter of the crime. (Docket No. 124 at 14–16, Zorrilla; Docket No. 125, at 16–20, Calderón.) The version of facts accepted by Calderón is of particular significance because the facts read specifically place Montilla present when the drug is tested "in front of the three codefendants", (Docket No. 125 at 19), and later place Montilla providing counter surveillance when the drug was delivered to the agents, immediately prior to the arrest. (*Id.* at 20.) Counsel for Calderón further intervened at the colloquy to clarify that defendant accepted the version of facts, but clarified that Calderón did not have the role of a leader. (*Id.* at 21.) [4]

Most critical, however, is the contradiction in testimony incurred by both Calderón and Zorrilla with defendant's own witnesses at the trial, as to where Montilla was arrested and explaining at trial that he did not act as a lookout when the arrest took place. At trial Montilla produced two witnesses of dominican origin, (Docket No. 65 at 341–342), Mr. Luis Alfonseca and Mr. Angel M. Morla. They both provided exculpatory statements. Morla implied that Montilla never entered the room adjacent to the mechanic shop where the drug transaction took place (Zorrilla's residence) (*Id.* at 285–88). Morla further stated that Montilla requested a break to smoke outside the shop, was granted said break to smoke and have a soft drink, and was subsequently arrested in the street outside, underneath his car located in front of the Metreza Night Club. (*Id.* at 288–92.) The other defendant's witness, Mr. Alfonseca, testified that the defendant requested a break to smoke and "the moment he went out to smoke a cigarette some agents came with pistols in their hands." (*Id.* at 3367.) The statements of Morla and Alfonseca as to the place and the circumstances of the arrest where obviously intended at trial to explain

why defendant Montilla was located outside on the street the moment of the arresthe was out on a cigarette break, not acting as a lookout in the street, as two government agents had testified. The "new" facts testified by Calderón and Zorrilla show that he was arrested in the shop: The court: And where was Mr. Montilla.

> The witness (Zorrilla): He must have been inside the shop. If he was there he must have been inside the shop.
> The court: Wasn't Mr. Montilla arrested in the street also, in the sidewalk.
> The witness: No, they took him out of the shop, If I am not mistaken.
> The court: Place an "X" where Montilla was arrested.
> The witness: I did not see because I was facing the street and I was arrested first, and I did not see him. He was arrested later.
>
> . . .
>
> The court: Very well my interest is now Montilla your statement is that Montilla was in the back.
> The witness: Yes, because when I was arrested he was taken from the back. (Docket No. 129 at 86–89.)

Mr. Calderón stated that he saw when defendant Montilla was "pulled from underneath a car that he was working at." (*Id.* at 95). Later in his testimony, Calderón explained that he (Calderón) was "in the middle of the entrance to the shop," when observing Montilla being "pulled from underneath a car." (*Id.* at 161). Calderón, at the time, was being taken by agents from the street where he was arrested to the shop. Zorrilla was arrested in the street. (*Id.* at 160.) Hence, Calderón was looking toward the shop when he saw Montilla "pulled from underneath a car." The version of Calderón and Zorrilla is, hence, in direct contradiction with the testimony of defendant's prior witnesses at trial (Morla and Alfonseca). Counsel for Montilla, in its memorandum, recognizes: "We concede there is an inconsistency." (Docket No. 130, page (9) unnumbered.)

---

3. Justice Kennedy also joined the opinion.

4. Both defendants stated that they "agreed" with the governments version of facts. (Docket No.

124 at 16, R. Zorrilla; Docket No. 129 at 19, 20–21, Calderón.)

Finally, in weighing the credibility of all witnesses in this case, the court finds no potent reason for discrediting the testimony of informant Eladio Valerio, Agent Waldemar Rodríguez, and Agent Domingo Carrasquillo. Eladio Valerio was truthful in providing testimony as to the culpability of codefendants Calderón and Zorrilla, both of whom plead guilty; the court finds no motive, bias, contradiction or inherent error in Eladio's factual testimony as to Montilla. The testimony of Waldemar Rodríguez and Domingo Carrasquillo clearly place Montilla outside, acting as a lookout when arrested, as did co-defendants witnesses Morla and Alfonseca, except that they insist he was there on a cigarette break. Surprisingly, Calderón and Zorrilla place Montilla inside the shop working underneath a car when arrested.

The court, therefore, finds that the testimony of Calderón and Zorrilla is not credible and will not likely produce acquittal on retrial because of the following:

(1) The "skepticism" admonition provided by the First Circuit Court of Appeals as to the almost identical affidavits of sentenced codefendants Calderón and Zorrilla; (2) the "suspect" nature of "late" affidavits produced by sentenced inmates to exculpate others; (3) the previous sworn acceptance of Calderón and Zorrilla as to facts, as opposed to conclusionary statements, inculpating Montilla as an aider and abettor at the plea colloquy; and (4) the contradiction of Calderón's and Zorrilla's testimony with a version of facts testified at the trial as to the Montilla's arrest previously provided at trial by Montilla's witnesses.[5]

The request for a new trial is therefore **DENIED.**

**IT IS SO ORDERED.**

---

5. The Court of Appeals stated that Calderón and Zorrilla's statements "appear to give rise to a reasonable probability of acquittal at retrial." The Court of Appeals added that "[w]hether the latter will retain their force after close examination is a different question; as we note below, a hearing might cast a different light on these statements." *Montilla-Rivera,* 115 F.3d at 1065,

n. 2. The hearing has caused the trial court to be convinced "assessing the credibility of both witnesses that testified at trial and those whose testimony constitute 'new' evidence," *Montilla-Rivera,* 115 F.3d at 1067 (internal citations omitted) that the testimony of Calderón and Zorrilla will not likely produce acquittal.