USCA1 Opinion

 

 United States Court of Appeals For the First CircuitNo. 98-1729 UNITED STATES OF AMERICA, Appellee, v. FERNANDO MONTILLA RIVERA, Defendant, Appellant. APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Daniel R. Dom¡nguez, U.S. District Judge] Before Boudin, Circuit Judge, Coffin, Senior Circuit Judge, and Lynch, Circuit Judge.   Marlene Aponte Cabrera, by appointment of the Court, forappellant. Camille Velez-Rive, Assistant United States Attorney, withwhom Guillermo Gil, United States Attorney, and Jose A. Quiles-Espinosa, Senior Litigation Counsel, were on brief for appellee.March 22, 1999   COFFIN, Senior Circuit Judge. Federal agents arresteddefendant-appellant Fernando Montilla Rivera ("Montilla") in a drugsting, along with Miguel Calder¢n ("Calder¢n") and Ramon Zorilla("Zorilla"). While Calder¢n and Zorilla were directly involved inthe transaction, the government claimed that Montilla was thelookout. After a four day jury trial, Montilla was convicted. Hesubsequently sought a new trial based on previously unavailableevidence, but the court found that the evidence was not newlydiscovered and denied his motion. On appeal, we concluded thatMontilla's evidence was sufficiently new for the purposes of hismotion and remanded for a hearing on whether it met the standardfor ordering a new trial. After the district court held thehearing, it ruled that the standard had not been satisfied, anddenied his motion. Montilla again appeals. Because the districtcourt did not abuse its discretion in denying Montilla's motion, weaffirm its decision. I. Background The factual background was detailed in our earlierdecision, United States v. Montilla, 115 F.3d 1060 (1st Cir. 1997). Rather than repeat ourselves, we will review only that evidencerelevant to the claim currently before us. On March 22, 1995, a confidential government informantapproached Calder¢n about purchasing drugs. Calder¢n suggestedthat they go "see the mechanic" and arranged to meet two dayslater. When they did meet, Calder¢n took the informant to an autorepair shop behind a nightclub. Zorilla and Montilla weremechanics at that auto shop at various times, and were both waitingthere for Calder¢n and the informant. When the two arrived, theywent with Zorilla and Montilla into a small room inside the back ofthe shop. Calder¢n and Zorilla negotiated to sell the informant twokilograms of cocaine while Montilla stood ten to twelve feet awayby the door "watching and looking." Once the price and quantityhad been agreed upon, Zorilla made a call to have the drugsdelivered, and the informant called DEA Agent Carrasquillo ("AgentCarrasquillo") to arrange for the money. When the drugs weredelivered, the informant found the quality of the cocaine to begood, so he and Calder¢n went to a nearby shopping center to meetAgent Carrasquillo and get the money. Zorilla and Montilla stayedat the shop with the cocaine. After he had seen the money, Calder¢n returned to therepair shop; the informant and Agent Carrasquillo followed tenminutes later. When they arrived, the informant reentered thesmall room and told the others that his partner, AgentCarrasquillo, would not come inside and would only buy the cocaineoutside where Carrasquillo was parked. After some disagreementabout where the exchange would take place, Montilla, Zorilla, andCalder¢n went outside. Calder¢n approached Agent Carrasquillo'scar with the cocaine. When the delivery was made, federal agentsquickly arrested Calder¢n, Zorilla and Montilla.  At trial there was conflicting testimony as to whetherMontilla was actually in the back room during the negotiations, andas to precisely where he was when the agents converged to arrestthe three. The government recorded the operation in two ways: theinformant wore an audio recording device, and a DEA agent namedRodriguez videotaped the auto shop from across the street. Allparties agree that Montilla neither appears in the videotape nor isheard on the informant's audio tape. However, several governmentwitnesses testified to Montilla's role as a lookout. While both Calder¢n and Zorilla pled guilty, Montillachose to go to trial. Before trial, Montilla moved to produce hiscodefendants to testify at trial, but they exercised theirprivileges against self-incrimination and refused to testify. Thejury found Montilla guilty, and the court sentenced him to 60months of imprisonment and eight years of supervised release. After Calder¢n and Zorilla had been sentenced, Montillarequested that they attest to his innocence. He sent, and theysigned, nearly identical affidavits stating that Montilla was notinvolved in the drug transaction for which they both had pledguilty. Claiming that Calder¢n's and Zorilla's testimony waspreviously unavailable, Montilla filed a post-conviction motion fora new trial. The district court denied the motion because it foundthat "the evidence was both known and available" at trial. Montilla, 115 F.3d at 1065. On appeal, this court refused to applya categorical rule that exculpatory affidavits from codefendantswho did not testify at trial because they exercised their FifthAmendment privileges could never qualify as "newly discovered"evidence for the purposes of a motion for a new trial. Id. Instead, while "shar[ing] the general skepticism concerning [suchbelated exculaptory] statements [of codefendants]," we remanded toallow the district court to consider whether "the interests ofjustice require a new trial." Id. at 1067.  The district court held an evidentiary hearing at whichboth Calder¢n and Zorilla testified. The court subsequently issuedan opinion and order finding that they were not credible, and thatthe inconsistency between their post-conviction statements and thetrial testimony made it unlikely that the new evidence would leadto acquittal if a retrial were granted. Consequently, the courtdenied Montilla's motion, and he now appeals that decision to us. II. Discussion Federal Rule of Criminal Procedure 33 empowers a districtcourt to grant a new trial "if required in the interest ofjustice." As we said in Montilla's previous appeal, if "the motionis based on new or previously unavailable evidence, the defendanthas to establish that the evidence was: (i) unknown or unavailableat the time of trial, (ii) despite due diligence, (iii) material,and (iv) likely to result in an acquittal upon retrial." Montilla,115 F.3d at 1064-65 (citations omitted).  Citing our earlier opinion, the district court determinedthat the first three elements had been met. Calder¢n's andZorilla's statements were unavailable to Montilla because each wasexercising his Fifth Amendment privilege against self-incrimination. Montilla apparently exercised due diligence in hisattempt to obtain their statements because he had tried on severaloccasions to interview them. And their statements were materialbecause, if believed, the affidavits exculpated Montilla from anyinvolvement in the drug transaction. The district court,therefore, found that the only element still in dispute was whetherit was likely that the new evidence would result in acquittal if anew trial were held. Reiterating our skepticism about whether tobelieve the post-sentencing exculpatory testimony of twocodefendants whose guilt was beyond dispute, the court found thatCalder¢n's and Zorilla's testimony did not warrant a new trial. The decision to grant or deny a new trial is committed tothe sound discretion of the district court. See United States v.Soto-Alvarez, 958 F.2d 473, 479 (1st Cir. 1992). We will reverseonly if its decision constitutes a "manifest abuse of discretion." United States v. Tibolt, 72 F.3d 965, 972 (1st Cir. 1995). Basedon an assessment of the facts revealed at the trial and the newevidence, we are firmly convinced that the district court did notabuse its discretion. Instead, we agree with the district courtthat the new evidence "would [not] so undermine the government'scase as to give rise to a 'reasonable' probability of acquittal onretrial." Id. (quoting United States v. Sepulveda, 15 F.3d 1216,1220 (1st Cir. 1993)). Montilla argues that the new testimony wascrucial in four ways, but we are unpersuaded that it would lead toa different result. A. The identity of "the mechanic." Montilla contendsthat he was not "the mechanic" to whom Calder¢n was referring whenCalder¢n and the informant went to "see the mechanic," and thattestimony at the evidentiary hearing revealed that "the mechanic"was a man named Ramads, the supplier who delivered the twokilograms to Zorilla. Montilla's conviction as a lookout at the drugtransaction did not turn on the identity of someone called "themechanic." It revolved around whether Montilla was in the backroom when the initial agreement was reached, and whether he wasacting as a lookout outside when Calder¢n delivered the cocaine toAgent Carrasquillo's car. Although our previous opinion suggestedthat Montilla was the mechanic, see Montilla, 115 F.3d at 1062, itwas not clear from the testimony at trial whether "the mechanic"even referred to an individual. In any event, it is unlikely thatthe jury would have found that Calder¢n was referring to Montillawhen he went to "see the mechanic" because Montilla was only aminor participant in the deal and not directly involved in settingthe terms and price. Testimony that Montilla was not "the mechanic" makes itno less likely that the jury would conclude that he was a lookoutduring the drug transaction. B. Sharing the profits from the transaction. Montillaalso points to Calder¢n's and Zorilla's testimony that they werenot going to share the profits from the drug transaction with him. Again, this assertion fails to undermine the strength of thegovernment's case in any meaningful way. The conviction was basedon a finding that he was a lookout because he was carefullywatching the initial negotiation and observed the delivery from adistance. Whether or not he would receive a share of the profitsdoes not invalidate the evidence on which his conviction was based. Although the conviction certainly would be bolstered by testimonyto the contrary, the fact that Montilla was not going to receive aportion of the proceeds does not discredit the jury's finding. Itcertainly does not create the requisite "reasonable probability"that he would be acquitted upon retrial. C. Montilla's location during the transaction. NextMontilla argues that Calder¢n's and Zorilla's testimony about hiswhereabouts during both the negotiation and the exchangesignificantly changes the picture presented by the trial evidence. Because this argument directly implicates the basis for the jury'sdecision, we will consider testimony involving Montilla's locationin detail.  At the trial and the evidentiary hearing, the court hearda substantial amount of evidence regarding Montilla's position atthe moment of the actual transaction. The government's witnessesall agreed that Montilla was standing in front of the workshop. First, Agent Rodriguez stated that he saw Montilla being arrested"in front of the [auto] repair shop" near a blue van. Next, theinformant noted that Montilla witnessed the transaction outsidenext to the shop door, close to the same van. Finally, AgentCarrasquillo testified that Calder¢n, Zorilla and Montilla came outof the shop together, and, when Calder¢n approached the car withthe drugs, Montilla was standing just to the left of the entranceto the workshop. While the government's witnesses consistently insistedthat Montilla observed the deal, Montilla's witnesses contradictone another. At trial, Montilla produced both Angel Morla("Morla"), who was the owner of the auto repair shop, and LouisAlfonseca ("Alfonseca"), who was visiting with Morla and Montilla. Alfonseca claimed that when Montilla "went out[side] to smoke acigarette," the federal agents rushed in. Similarly, Morla allegedthat just before the arrests were made, Montilla went outside fora cigarette and a soft drink. Later in his testimony Morlasuggested that Montilla was arrested under a car outside in frontof the nightclub adjoining the auto shop, and not in the shopitself. Hence, both these witnesses placed Montilla outside theshop at the time of the arrests.  On the other hand, Calder¢n and Zorilla both placeMontilla somewhere inside the shop. At the evidentiary hearingCalder¢n testified that at the time of the arrests he saw Montillabeing pulled from underneath the car he was working on in the shop. Zorilla claimed to have seen Montilla being brought from the backof the shop. In short, then, Calder¢n's and Zorilla's statements donot furnish new evidence supporting Montilla's defense. Instead,they provide an entirely different version of the events. Allwitnesses at trial agreed that Montilla was somewhere outside theshop. The government's theory was that he was standing by theentrance to the workshop acting as a lookout. Montilla's defenseat the time was that he was having a cigarette or was under a carin front of the adjoining nightclub. Now Montilla claims he wasinside the shop either under a car or in the back. Thisinconsistency regarding the central aspect of his defensesubstantially weakens Montilla's assertion that he is likely to beacquitted upon retrial. As for whether Montilla was involved in the initialnegotiations, there is a direct contradiction between theinformant's testimony and that of Calder¢n and Zorilla. Theconfidential informant testified that Montilla was present duringthe initial negotiation. Although Montilla is not heard on theaudio recording, the informant testified that Montilla was standingsilently inside the room by the entrance. The informant noted thatMontilla was "ten or twelve feet" away from the negotiation and"was watching, looking" while Calder¢n and Zorilla were negotiatingthe drug transaction. The informant also stated that when thedrugs were delivered and tested, Montilla was in essentially thesame place observing him. On the other hand, at the evidentiaryhearing Calder¢n and Zorilla claimed that Montilla was not in theroom during the initial negotiations. These statements present two different versions of theinitial negotiations. In assessing whether an acquittal is likely,the court had to weigh the witnesses' credibility. Montilla, 115F.3d at 1067. Here again we have no doubt that the district courtproperly believed the government's witnesses and questioned bothCalder¢n's and Zorilla's credibility. With respect to theinformant the district court specifically found neither any "potentreason for discrediting [his] testimony[,]" nor any "motive, bias,contradiction or inherent error in [his] factual testimony as toMontilla." United States v. Montilla, 9 F. Supp. 2d 81, 88 (D.P.R.1998). Although there was no reason to disbelieve the informant,the court cited a variety of grounds on which to questionCalder¢n's and Zorilla's statements. In addition to theinconsistency with the testimony at trial regarding Montilla'swhereabouts during the exchange, the court noted that each providedexculpatory testimony only after sentencing pursuant to a guiltyplea. At the time of their affidavits Calder¢n and Zorilla hadnothing to lose by exonerating Montilla. Both had already beenconvicted and sentenced. They were in a position to say "whateverthey [thought] might help their co-defendant, even to the point ofpinning all the guilt on themselves, knowing they [were] safe" fromany increased punishment for the transaction. United States v.Reyes-Alvarado, 963 F.2d 1184, 1188 (9th Cir. 1992). Numerouscourts have found such post-sentencing exculpatory testimony ofco-conspirators to be "inherently suspect." United States v.Simmons, 714 F.2d 29, 31 (5th Cir. 1983). Under the circumstances,we have no reason to disagree with the court's finding thatCalder¢n and Zorilla were not credible. D. Statements of Montilla's innocence. Montilla's finalbasis for a new trial is that Calder¢n and Zorilla filed nearlyidentical affidavits stating that he was not involved in the drugtransaction in question. As we have stated, however, the districtcourt justifiably discounted their testimony. By nature, this sortof blanket exoneration of Montilla by two alleged co-conspiratorswho had pled guilty and had been sentenced is "'untrustworthy andshould not be encouraged.'" Montilla, 115 F.3d at 1066 (quotingReyes-Alvarado, 963 F.2d at 1188). As with the other evidence,these statements do not lead to a reasonable probability thatMontilla would be acquitted on retrial. III. Conclusion Because it is "sheer speculation" that "the newlydiscovered evidence would change the jury's decision," UnitedStates v. Nero, 733 F.2d 1197, 1205 (7th Cir. 1984), the districtcourt did not abuse its discretion in denying Montilla's motion fora new trial. Affirmed.